**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA, DEPARTMENT OF ENVIRONMENTAL PROTECTION,<br><br>          Plaintiff,<br><br>  v.<br><br>ONE BREWERY PLACE, INC.; HAROLD B. DAVIDSON; JAMES RANDY DAVIDSON; M. ULTRA INVESTMENT GROUP, LTD.; and ARXADA, LLC,<br><br>          Defendants. | Civ. Action No.: 2:23-cv-873<br><br>[ORAL ARGUMENT REQUESTED] |

**DEFENDANT ARXADA, LLC'S MEMORANDUM OF LAW IN SUPPORT OF**
<u>**MOTION TO DISMISS PLAINTIFF'S COMPLAINT**</u>

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................... iii

INTRODUCTION .......................................................................................................................1

BACKGROUND .........................................................................................................................2

LEGAL STANDARD..................................................................................................................3

ARGUMENT...............................................................................................................................4

   I.  The Complaint Fails to Plead Sufficient Factual Allegations to Statetate
      Plausible Claims Against Arxada..................................................................................4

   II.  The Complaint Does Not Plausibly Suggest Arxada Arranged for the
      Disposal of Waste or Caused a Public Nuisance..................................................5

      A.  The Complaint Fails to State a Claim Against Arxada as an
          Arranger under CERCLA. ..................................................................................6

      B.  The Complaint Fails to State a Claim Against Arxada as an
          Arranger under HSCA. .......................................................................................8

      C.  The Complaint Fails to State a Claim Against Arxada for Public
          Nuisance Under Any of the Pennsylvania Statutes Pled. .............................9

CONCLUSION.........................................................................................................................12

# **TABLE OF AUTHORITIES**

**Federal Court Cases**

*Agere Sys., Inc. v. Advanced Env't Tech. Corp.*,
  No. 02-3830, 2006 WL 3366167 (E.D. Pa., 2006) .................................................................. 8

*Agere Sys., Inc. v. Advanced Env't Tech. Corp.*,
  602 F.3d 204 (3d Cir. 2010) ..................................................................................................... 8

*Ashcroft v. Iqbal ("Iqbal")*,
  556 U.S. 662 (2009) .............................................................................................................. 3, 4

*Bell Atlantic Corp. v. Twombly ("Twombly")*,
  550 U.S. 544 (2007) .............................................................................................................. 3, 4

*Burlington N. & Santa Fe Ry. v. United States*,
  556 U.S. 599 (2009) ........................................................................................................ 6, 7, 8

*Consol. Coal Co. v. Ga. Power Co.*,
  781 F.3d 129 (4th Cir. 2015) .................................................................................................. 7

*Crescent Mine, LLC v. Bunker Hill Mining Corp.*,
  No. 2:21-cv-00310-DCN, 2022 WL 612394 (D. Idaho Mar. 2, 2022) ...................................... 3

*Fowler v. UPMC Shadyside*,
  578 F.3d 203 (3d Cir. 2009) ..................................................................................................... 4

*Pa. Dep't of Env't Prot. v. Trainer Custom Chem.*,
  906 F.3d 85 (3d Cir. 2018) ....................................................................................................... 9

*Ransom v. Marrazzo*,
  848 F.2d 398 (3d Cir. 1988) ..................................................................................................... 2

*Tomko v. Baldwin Borough*,
  No. 20-822, 2021 WL 3610038 (W.D. Pa. June 30, 2021) ...................................................... 3

**Federal Statutory Authorities**

42 U.S.C. § 9607(a) ...................................................................................................................... 2

42 U.S.C. § 9607(a)(3) .................................................................................................................. 3

42 U.S.C. § 9607(b)(3) .................................................................................................................. 8

42 U.S.C. § 9607(a)(3) .............................................................................................................. 5, 6

## State Statutory Authorities

35 P.S. § 691.1 ............................................................................................................................ 2

35 P.S. § 691.3 .......................................................................................................................... 11

35 P.S. § 6018.101 ...................................................................................................................... 2

35 P.S. § 6018.601 .................................................................................................................... 10

35 P.S. § 6020.101 ...................................................................................................................... 2

35 P.S. § 6020.507(a) ................................................................................................................ 10

35 P.S. § 6020.701(a)(2) ............................................................................................................. 9

71 P.S. § 510-17 .......................................................................................................................... 2

71 P.S. §510-17(3) .................................................................................................................... 11

71 P.S. §510-17(4) .................................................................................................................... 11

## Federal Rules and Regulations

Fed. R. Civ. P. 8(a)(2) ................................................................................................................ 3

## INTRODUCTION

Defendant Arxada, LLC ("Arxada")[1] moves under Fed. Rule Civ. Proc. 12(b)(6) to dismiss Plaintiff Commonwealth of Pennsylvania Department of Environmental Protection's ("Plaintiff" or "Department") Complaint because it fails to state a claim upon which relief may be granted against Arxada.  The Department's Complaint offers a single conclusory allegation that Arxada arranged for the disposal of hazardous substances at the former Swimming Pool Doctor site (the "Site").  In contravention of basic federal pleading requirements, the Complaint contains no factual averments in support of that naked conclusion.  The only reasonable inference that can be drawn from the allegations in the Complaint is that Arxada, a specialty chemical manufacturer, sold usable chemicals to the owners and operators of the Site, who were in the business of formulating chemical products for use in swimming pools, among other applications.  Basic Superfund jurisprudence (followed in Pennsylvania's cleanup law) of the useful product defense precludes liability under these circumstances.  Arxada cannot be held liable for another party's failure to properly store and maintain the chemicals Arxada sold to them.

Nor do any plausible inferences from this threadbare Complaint support nuisance or other liability under Pennsylvania's pollution laws. Nothing reasonably suggests that Arxada – a manufacturer and supplier of useful chemical products – caused a release or a public nuisance at its customer's site.

---

[1] Arxada is the successor of Lonza, Inc.  Lonza, Inc. merged into Lonza, LLC in 2019.  The name of Lonza, LLC later was changed to Arxada, LLC.  Arxada and Lonza are referred to herein as "Arxada."

1

## BACKGROUND[2]

This case is a garden-variety CERCLA action for recovery of cleanup costs. The Department seeks response costs relating to its investigation and remediation of a release of hazardous substances at or from the Site. Compl. ¶ 1. The Complaint's six counts assert claims under Section 107(a) of the Comprehensive Environmental Response, Compensation and Liability Act of 1980, as amended ("CERCLA"), 42 U.S.C. § 9607(a), and under various Pennsylvania statutes.[3]  Compl. ¶ 1.

Arxada is a chemical manufacturer with a facility in Williamsport, Pennsylvania.  The former Swimming Pool Doctor facility was located on a 1.12-acre parcel in Rochester, Pennsylvania that contained warehouses.  Compl. ¶ 10.  Operations at the Site involved chemicals used for swimming pool maintenance, machinery solvents, and other industrial chemicals.  Compl. ¶ 11.  Arxada sold chemicals to the owners or operators of the Site.  The Complaint alleges that chemicals, including chlorine, bonderite, and hydantoin, were improperly stored and released from the Site.  Compl. ¶¶ 11-12.  Plaintiff alleges that it incurred response costs in excess of $2.4 million as the result of its investigation and remediation of hazardous substances released at the Site. Compl. ¶¶ 13-14.

The Complaint's sole factual allegation against Arxada is that "[b]y contract, agreement or otherwise, Arxada, LLC, or its predecessor-in-interest, arranged for disposal or treatment at the Site of hazardous substances it owned or possessed, within the meaning of Section 107(a)(3) of

---

[2] Solely for the purposes of this motion, Defendants accept Plaintiff's non-conclusory factual allegations as true.  *Ransom v. Marrazzo*, 848 F.2d 398, 401 (3d Cir. 1988).

[3] The statutes at issue are the Hazardous Sites Cleanup Act, 35 P.S. §§ 6020.101 - 6020.1305; the Solid Waste Management Act, 35 P.S. §§ 6018.101 - 6018.1003; The Clean Streams Law, 35 P.S. §§ 691.1 - 691.1001; and the Administrative Code of 1929, 71 P.S. § 510-17.

2

CERCLA, 42 U.S.C. § 9607(a)(3)." Compl. ¶ 21. Plaintiff relies on this single conclusory allegation in support of all six of its claims for relief against Arxada. *See* Compl. ¶¶ 15-43.

## LEGAL STANDARD

The law applicable to a fact-starved complaint like this is well developed. A pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief" to satisfy Federal Rule of Civil Procedure 8(a)(2). *Ashcroft v. Iqbal ("Iqbal")*, 556 U.S. 662, 677-78 (2009). The Supreme Court, however, has made clear that a complaint needs more than a blanket assertion of entitlement to relief. *Bell Atl. Corp. v. Twombly ("Twombly")*, 550 U.S. 544, 555 n.3 (2007). Factual allegations must "plausibly suggest[]" and not be "merely consistent" with a right to relief. *Id.* at 557; *Iqbal*, 556 U.S. 662, 678 (2009). "[A] complaint [does not] suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id. (quoting Twombly,* 550 U.S. at 557).

While well-pleaded facts are accepted as true on a motion to dismiss, "labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555; *see, e.g., Tomko v. Baldwin Borough*, No. 20-822, 2021 WL 3610038, at *8 (W.D. Pa. June 30, 2021) (Dodge, M.J.) (finding that under "well-established authority," describing Defendants' actions with unsupported conclusory labels "does not state a claim for relief."). Courts routinely dismiss CERCLA claims when they are not pled with sufficient factual allegations in support. *See, e.g., Heller Urban Renewal, LLC v. FER Boulevard Realty Corp.*, No. 13-431(SRC), 2014 WL 252106 (D.N.J. Jan. 23, 2014); *Crescent Mine, LLC v. Bunker Hill Mining Corp.,* No. 2:21-cv-00310-DCN, 2022 WL 612394, at *6 (D. Idaho Mar. 2, 2022).

# ARGUMENT

## I. THE COMPLAINT FAILS TO PLEAD SUFFICIENT FACTUAL ALLEGATIONS TO STATE PLAUSIBLE CLAIMS AGAINST ARXADA.

The Complaint must be dismissed because it consists of a single bare-bones factual allegation against Arxada, together with conclusory recitations of the basic elements of certain causes of action. Under the Supreme Court's *Twombly* decision, "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions." 550 U.S. at 555 (internal citations and quotations omitted). In *Iqbal*, the Court expanded on its Twombly holding by explaining:

> [t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.

556 U.S. at 678 (internal citations and quotations omitted).

The Third Circuit has repeatedly enforced *Twombly/Iqbal* requirements, stating in its 2009 *Fowler* decision that "[a]fter *Iqbal*, it is clear that conclusory or 'bare-bones' allegations will no longer survive a motion to dismiss: 'threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.'" *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (citing *Iqbal*, 556 U.S. at 678). The Third Circuit further held that to determine whether a complaint sets forth allegations sufficient to allow the court to draw a reasonable inference of potential liability for the alleged misconduct, the court must first separate the factual and legal elements of a claim and then determine whether the facts are sufficient to establish a plausible claim for relief. *Id. Fowler*, 578 F.3d at 210-11. In assessing the sufficiency of the *Fowler* complaint, the Third Circuit found that the plaintiff had suitably alleged "how, when, and where" her employer allegedly discriminated against her. *Fowler*, 578 F.3d at 212 (finding

4

"[t]he factual allegations in Fowler's complaint are 'more than labels and conclusions' or 'a formulaic recitation of the elements of a cause of action.'").

In contrast, the Department's Complaint nowhere indicates how Arxada allegedly "contracted, agreed, or otherwise" arranged for the disposal of hazardous substances at the Pool Doctor Site. *See generally* Compl. ¶¶ 10-24. Indeed, the Complaint contains nothing more than a few conclusory words quoting the basic elements found in CERCLA Section 107(a)(3). *Compare* CERCLA Section 107(a)(3), 42 U.S.C. § 9607(a)(3) ("Any person who by contract, agreement, or otherwise arranged for disposal or treatment … of hazardous substances owned or possessed by such person …") *with* Compl., ¶ 21 ("By contract, agreement, or otherwise, Arxada, LLC, or its predecessor-in-interest, arranged for disposal or treatment at the Site of hazardous substances it owned or possessed …"). This is the essence of inadequate pleading forbidden by the Supreme Court and requiring dismissal.

There is simply no factual basis for any reasonable inference that Arxada is liable for disposing of hazardous wastes at the Pool Doctor facility, causing a release, or causing a nuisance. Indeed, the only reasonable inference that can be drawn from the Complaint is that Arxada – a chemical manufacturer in the business of selling chemicals – sold chemical products to the owners and operators of the Pool Doctor site, who were in the business of buying and reformulating chemical products for use in swimming pools and other applications. *See* Compl. at §11. The Complaint should be dismissed.

**II.     THE COMPLAINT DOES NOT PLAUSIBLY SUGGEST ARXADA ARRANGED FOR THE DISPOSAL OF WASTE OR CAUSED A PUBLIC NUISANCE.**

The Complaint against Arxada should be dismissed under Rule 12(b)(6) for the additional reason that its allegations do not support a reasonable inference that Arxada may be held liable under any of Plaintiff's six claims for relief.

A. **The Complaint Fails to State a Claim Against Arxada as an Arranger under CERCLA.**

Arxada cannot be held liable under CERCLA because it did not arrange for the disposal of waste at the Site but rather sold a useful product to the Site's owners and operators. CERCLA Section 107(a)(3) provides that "any person who … arranged for disposal or treatment … of hazardous substances" at a facility from which such hazardous substances were released to the environment may be held liable for response costs. 42 U.S.C. § 9607(a)(3). Unlike the intentional disposal of a hazardous substance, however, the sale of a usable product that happens to contain a hazardous substance does not give rise to CERCLA liability. *Burlington N. & Santa Fe Ry. v. United States*, 556 U.S. 599, 609-10 (2009).

In *Burlington Northern*, an agricultural chemical distribution business purchased pesticides and other chemical products from suppliers, applying the products to customers' farms. *Id*. at 603. The company stored and distributed various hazardous chemicals, including herbicides, on its property over the years. *Id*. While transferring chemicals, the company would regularly spill chemicals onto the ground. *Id*. at 604. The supplier of the herbicide was aware that its product was frequently spilled at the site. *Id*. at 612. The spills eventually caused a groundwater plume that threatened to contaminate nearby drinking water supplies. *Id*. at 604. The chemical distribution company became insolvent and the federal government spent more than $8 million to remediate the site. *Id*. at 605. The government sued the herbicide supplier, alleging it had "arranged for" the disposal of hazardous substances under CERCLA Section 107(a)(3), 42 U.S.C. § 9607(a)(3), through its sale and delivery of herbicides to the site, knowing that some portion of them would be spilled there. *Id*.

The Supreme Court held that it was "plain from the language of the statute that CERCLA liability would attach under § 9607(a)(3) if an entity were to enter into a transaction for the sole

purpose of discarding a used and no longer useful hazardous substance." *Id*. at 609-10.  However, if the entity was merely selling a useful product, the seller could not be held liable as an arranger "if the purchaser of that product later, and unbeknownst to the seller, disposed of the product in a way that led to contamination." *Id*.  The Supreme Court emphasized that the mere knowledge that its product would be leaked, spilled, dumped, or otherwise discarded was insufficient to establish that the company planned for the disposal, "particularly when the disposal occurs as a peripheral result of the legitimate sale of an unused, useful product." *Id*. at 612.

*Burlington Northern* controls here.  Plaintiff makes no allegation that any chemicals Arxada supplied to the Pool Doctor site were no longer useful, nor does Plaintiff allege that Arxada entered into any transaction for the sole purpose of discarding a used and no longer useful hazardous substance.  *See generally* Compl. ¶¶ 10-24.  Indeed, any such allegations would be false. Rather, all reasonable inferences of the Complaint suggest that Arxada sold feedstock chemicals to the owners or operators of the Pool Doctor Site, who used them to make chemical products "used for swimming pool maintenance, machinery solvents, and other industrial chemicals." Compl. at §11.  The sale of usable chemicals to a third party in the business of using those chemicals cannot constitute arranging for disposal under CERCLA.  *See Burlington Northern,* 556 U.S. at 609-10; *see also Consol. Coal Co. v. Ga. Power Co.*, 781 F.3d 129, 144 (4th Cir. 2015) (for arranger liability to attach under CERCLA, seller must intend to "dispose of" a hazardous substance; defendant not liable where it sold "used, obsolete, or damaged electrical transformers" to a business that "reconditioned or repaired them for resale.").

Here, the Complaint fails to allege any facts regarding Arxada's intent in selling chemical products to the Pool Doctor Site.  *See generally* Compl. ¶¶ 10-24.  Indeed, the Complaint fails to make any assertions at all beyond a formulaic recitation of the elements of arranger liability under

7

CERCLA Section 107(a)(3).  Compl. ¶ 21.  The threadbare allegations against Arxada in this one-sentence paragraph of the Complaint cannot provide the basis for arranger liability under CERCLA.  The Complaint fails to state a claim that Arxada is liable as an arranger under CERCLA, and Plaintiff's First Claim for Relief must therefore be dismissed.[4]

> **B. The Complaint Fails to State a Claim Against Arxada as an Arranger under HSCA.**

Arxada is not an arranger under HSCA Section 701 for the same reasons it is not an arranger under CERCLA Section 107.  HSCA mirrors CERCLA,[5] and the Supreme Court has established that selling a useful product does not constitute arranging for disposal under CERCLA.  *See Burlington Northern*, 556 U.S. at 609-10, 612.  The definition of arranger liability under HSCA is identical to that under CERCLA, and therefore stating a claim for relief requires the same factual allegations under both statutes.  *Agere Sys., Inc. v. Advanced Env't Tech. Corp.*, No. 02-3830, 2006 WL 3366167, at *8 (E.D. Pa., 2006) (aff'd., *Agere Sys. v. Advanced Env't Tech. Corp.*, 602 F.3d 204, 236 (3d Cir. 2010)).

In *Agere*, the plaintiff asserted claims under both CERCLA and HSCA regarding the removal, transport, and disposal of chemical waste.  602 F.3d 204, 211 (3d Cir. 2010).  As part of the appeal, the plaintiffs asked the court to analyze under HSCA an issue that had already been decided under CERCLA.  *Id.* at 236.  In remanding the case, the Third Circuit instructed the District Court to "continue to address the CERCLA and HSCA issues in this case identically."  *Id*.

---

[4] Plaintiff's claim for CERCLA liability against Arxada should be dismissed for the additional reason that the release of hazardous substances at issue was caused by the act or omission of a third party, the owners and operators of the Swimming Pool Doctor site.  *See* CERCLA Section 107(b)(3), 42 U.S.C. §§ 9607(b)(3).

[5] Under HSCA, an arranger is a "person [who] generates, owns or possesses a hazardous substance and arranges by contract, agreement or otherwise for the disposal, treatment or transport for disposal or treatment of the hazardous substance." Pa. Stat. Ann. § 6020.701.

8

at 236.  The Third Circuit explained that liability under CERCLA "is neither greater nor lesser under the HSCA.  Indeed, the cost recovery and contribution provisions in HSCA are virtually identical to those in CERCLA."  *Id.* (internal quotations omitted); *see also Pa. Dep't of Env't Prot. v. Trainer Custom Chem.*, 906 F.3d 85, 90-91 (3d Cir. 2018) (stating that liability under HSCA mirrors liability under CERCLA).

Under HSCA Section 701(a)(2), as under CERCLA Section 107(a)(3), those who "arrange[] by contract, agreement or otherwise for the disposal, treatment or transport for disposal or treatment of [a] hazardous substance" may be held liable.  35 P.S. § 6020.701(a)(2).  As explained above, the Complaint does not provide any support for its bare conclusory allegation that Arxada arranged for the disposal of hazardous substances at the Site.  *See* Section I.A, *supra; see generally* Compl. ¶¶ 10-24.  Plaintiff's mere recitation of the elements of arranger liability under HSCA – just like its recitation of those same elements under CERCLA – is insufficient to state a claim, and Plaintiff's second count against Arxada must be dismissed.

### C. The Complaint Fails to State a Claim Against Arxada for Public Nuisance Under Any of the Pennsylvania Statutes Pled.

The Department's effort to shoehorn Arxada into its nuisance-based claims against the owners and operators of the Pool Doctor site also fails as a matter of law.  Counts three through six all allege nuisance-based claims under different state statutes:  HSCA, the Solid Waste Management Act ("SWMA"), the Clean Streams Law ("CSL"), and the Pennsylvania Administrative Code ("Administrative Code").  All four counts fail for the same reason: the Complaint does not plausibly allege that Arxada caused or allowed the release of a hazardous substance, or otherwise created a public nuisance.  Again, the solitary sentence in the Complaint specific to Arxada only vaguely concludes that Arxada "arranged for disposal," parroting

CERCLA's text, and the Department offers no allegations that even approach the elements required for pleading a statutory nuisance. Each of these counts is addressed below:

- **HSCA (Count Three)**: The Department contends, without support, that Arxada is liable for causing a public nuisance under HSCA. Under HSCA Sections 507(a), 1101 and 1108, anyone who causes a release of a hazardous substance may be held liable for creating a public nuisance and for the response costs caused by such a release. *See* 35 P.S. §§ 6020.507(a), 6020.1101, 6020.1108. Plaintiff's bare-bones allegations in support of this claim are limited to the following two unsupported conclusions: (i) "the release of hazardous substances at the Site resulted in a public nuisance," Compl. at ¶35; and (ii) "Defendants, or their predecessors-in-interest, caused this public nuisance." *Id.* at ¶36. Because the Complaint fails plausibly to allege that Arxada (as opposed to the owners or operators of the Site) caused a release of hazardous substances, it fails to state a claim for public nuisance against Arxada under HSCA.

- **SWMA (Count Four)**: Plaintiff alleges – again, without supporting facts – that Arxada caused a public nuisance under the SWMA and that Arxada is liable for the costs of abating the alleged nuisance. Compl. at ¶¶ 38-39. Under the SWMA, a party may be held liable for creating a public nuisance if it improperly handles or disposes of solid or hazardous wastes that are released to the environment. SMWA Sections 601, 610, 613; 35 P.S. §§ 6018.601, 6018.610, 6018.613. But the Complaint contains no allegations against Arxada relating to any solid or hazardous *wastes* at the Site. *See* Compl. at ¶¶ 10-24. Rather, Arxada sold *useful chemicals*

to the owners and operators of the Site, who, "over time abandoned and illegally disposed" of them.  Compl. at ¶ 11.

- **CSL (Count 5)**:  The Clean Streams Law likewise provides no relief against Arxada here.  Under the CSL, a person who discharges a substance into Pennsylvania waters that causes or contributes to pollution creates a public nuisance and is liable for its abatement.  CSL Sections 3, 316, 401, 503, 601, and 611; 35 P.S. §§ 691.3, 691.316, 691.401, 691.503, 691.601, and 691.611.  However, Plaintiff's Complaint contains no allegations that suggest Arxada was responsible for discharging any substance to any waters of the Commonwealth.[6]

- **Administrative Code (Count Six)**:  Plaintiff's final Claim, for public nuisance under the Administrative Code, fares no better.  Section 1917-A of the Administrative Code provides that the Department has the power to order nuisances to be abated.  *See* 71 P.S. §510-17(3).  Plaintiff's sixth claim seeks recovery of "the Department's costs to abate the public nuisance at the Site," but Section 1917-A authorizes recovery of such costs only from an "owner or occupant" who fails to comply with an order to abate a nuisance on their premises.  *See* 71 P.S. §§510-17(4)-(5).  Arxada never owned or operated the Site, nor does the Complaint allege that it did.

In short, none of Plaintiff's nuisance-based counts state a claim for relief against Arxada and all four counts should be dismissed with prejudice.

---

[6] The Complaint also fails to allege that any release of hazardous substances from the Site impacted waters of the Commonwealth.

11

## CONCLUSION

The Department's Complaint presents a textbook pleading failure under Rule 8. It lacks any plausible support for the bald conclusions that Arxada arranged for the disposal of waste or caused a public nuisance. The only reasonable inference supported by the Complaint is that Arxada sold useful chemicals to the Swimming Pool Doctor facility, which was in the business of using such chemicals to formulate products for swimming pools and other applications. At best, the Complaint may state a claim against the owners and operators of the Site for failing to properly store and maintain the chemicals supplied by Arxada and others, but it cannot state a claim against Arxada. The Complaint against Arxada should be dismissed in its entirety with prejudice.

October 16, 2023

Respectfully submitted,

*/s/ Daniel M. Krainin*_____
Daniel M. Krainin (admitted *pro hac vice*)
Beveridge & Diamond P.C.
825 Third Avenue, 16th Floor
New York, NY 10022
(212) 702-5400
dkrainin@bdlaw.com

*Counsel for Defendant Arxada, LLC*