## UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA, DEPARTMENT OF ENVIRONMENTAL PROTECTION,<br><br>        Plaintiff,<br><br>     v.<br><br>ONE BREWERY PLACE, INC.; HAROLD B. DAVIDSON; JAMES RANDY DAVIDSON; M. ULTRA INVESTMENT GROUP, LTD.; and ARXADA, LLC,<br><br>        Defendants. | )<br>)<br>)<br>)<br>)<br>)  Civ. Action No.: 2:23-cv-873<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

## FIRST AMENDED COMPLAINT

AND NOW comes Plaintiff, Commonwealth of Pennsylvania, Department of Environmental Protection ("Department"), and alleges as follows:

### Statement of the Case

1.      This is a civil action for the recovery from Defendants of response costs and applicable interest incurred by the Department in responding to the release or threatened release of hazardous substances at or from the former Swimming Pool Doctor Site ("Site"). The Department brings this action pursuant to Section 107(a) of the Comprehensive Environmental Response, Compensation and Liability Act of 1980, *as amended*, 42 U.S.C. §§ 9601-9675, ("CERCLA"), 42

U.S.C. § 9607(a), and pursuant to environmental statutes and common law of the Commonwealth of Pennsylvania, including the Hazardous Sites Cleanup Act ("HSCA"), 35 P.S. §§ 6020.101 – 6020.1305; the Solid Waste Management Act ("SWMA"), 35 P.S. §§ 6018.101 – 6018.1003; The Clean Streams Law ("CSL"), 35 P.S. §§ 691.1 – 691.1001; and Section 1917-A of the Administrative Code of 1929, 71 P.S. § 510-17.

## Jurisdiction and Venue

2.     The Court has jurisdiction over the subject matter of this action and the Parties hereto pursuant to Sections 107 and 113(b) of CERCLA, 42 U.S.C. §§ 107 and 9613(b), and 28 U.S.C. § 1331.  Pursuant to 28 U.S.C. § 1367, this Court has supplemental jurisdiction over the Department's claims arising under Pennsylvania state law.

3.     Venue is proper in this judicial district pursuant to Section 113(b) of CERCLA, 42 U.S.C. § 9613(b), and 28 U.S.C. §§ 1391(b) and (c), because the release or threatened release of hazardous substances that gives rise to the Department's claims has occurred in this judicial district.

## Parties

4.     The Department is the executive agency of the Commonwealth of Pennsylvania with the duty and authority to administer and enforce CERCLA and

the environmental laws of the Commonwealth of Pennsylvania, including but not limited to HSCA, the SWMA, and the CSL.

5.    One Brewery Place, Inc. is a Pennsylvania corporation with a registered business address at 25 New York Avenue, Rochester, PA 15074.

6.    Harold B. Davidson, known as Brad Davidson, ("Brad Davidson") is an individual with a mailing address at 188 Shady Rest Road, Ellwood City, PA 16117.

7.    James Randy Davidson, known as Randy Davidson, ("Randy Davidson"), is an individual with a mailing address at 1114 Blankenship Road, Dover, Florida 33527.

8.    M. Ultra Investment Group, Ltd. is a Pennsylvania corporation with a registered business address at 1439 Gas Valley Road Extension, Georgetown, PA 15043.

9.    Arxada, LLC is a Delaware limited liability company with a registered business address at 3500 Trenton Avenue, Williamsport, PA 17701.

<u>**Background**</u>

<u>One Brewery Place, Inc. and the Davidsons.</u>

10.    The Site is a 1.12-acre property that contained two buildings located in Rochester, Beaver County, Pennsylvania. Since December 1997, One Brewery Place, Inc. has owned and operated the Site, having purchased the Site from Harold

W. Davidson, known as Bud Davidson ("Bud Davidson"), and his son, Brad Davidson, the two at that time doing business as Davidson Industries.

11.     From approximately 1953 until his passing in 2009, Bud Davidson and, at times, his sons, Brad Davidson and Randy Davidson, owned and operated a family business at the Site by which they blended industrial chemicals for use in a wide range of applications, including solvents, lubricants, heat-treating salts, quenchants, cleaning compounds, and swimming pool disinfectants.

12.     Following the passing of Bud Davidson in 2009 and continuing at least through 2017, Brad Davidson, at times together with Randy Davidson, continued operation of the family business at the Site.

13.     While they were occasionally joined by transient employees, throughout its operations, Bud, Brad, and Randy Davidson were the core employees of the family business, with Bud Davidson serving as principal manager and chemist until his passing in 2009.

14.     Over the span of Site operations, the Davidsons operated under various business names, including Beaver Alkali Products, Environmental Aid Company, Universal Thermics, Davidson Industries. Swimming Pool Doctor, and One Brewery Place, Inc.

15.     Bud Davidson had a demonstrated history of non-compliance with environmental law, including in the 1970s his illegal discharge of industrial

wastewater into soil and groundwater from unpermitted impoundments in Lawrence County, Pennsylvania.

16.    During Site operations, the Davidsons commonly received from various generators shipments of industrial chemicals.  Those of the chemicals that were usable the Davidsons blended into a product they sold to various commercial, industrial, and residential end-users.  Others of these chemicals were unusable, and the Davidsons illegally disposed of them at the Site; or, alternatively, Bud Davidson processed them for use in various experimental applications.

17.    The Davidsons' illegal disposal at the Site included their stockpiling and abandonment of hazardous waste throughout Site buildings; their burial of drummed hazardous waste in the rear of the Site, behind Site buildings; and their disposal of hazardous waste onto Site building floors and in Site building floor drains, resulting in contamination of groundwater and, ultimately, the Ohio River, which runs at the foot of the Site.

18.    Beginning June 2019, after the collapse of a roof of one of the Site buildings, the Department conducted a cleanup of the Site in the form of a prompt interim response pursuant to Section 505(b) of HSCA, 35 P.S. § 6020.505(b).

19.    During its response, fire erupted from chemical materials at the Site, sending out from the Site and into the sky a noxious gaseous plume.  As a result,

local authorities issued temporary shelter-in-place orders to the surrounding community.

20. During its response, the Department encountered within Site buildings numerous drums and containers of unidentified waste. Many of the drums and containers were deteriorating, breached, and spilling their contents into a commingled, indistinguishable mass of waste.

21. The Department concluded on-site response activity in June 2020, and it completed its response with the receipt and approval of its contractor's close-out letter in August 2021.

22. The Department has incurred response costs in excess of $2.4 million, exclusive of interest, as the result of its investigation and remediation of the release and threatened release of hazardous substances at the Site.

Arxada, LLC, successor to Lonza, Inc.

23. Arxada, LLC is the successor-in-interest to Lonza, Inc. In 2019, Lonza, Inc. merged into Lonza, LLC. Lonza, LLC later changed its name to Arxada, LLC.

24. Prior to its merger with Arxada, LLC, Lonza, Inc. was a Swiss multinational manufacturing company providing product development services to pharmaceutical and biologic industries, including custom manufacturing of biopharmaceuticals for the bioscience sector.

25.     Among its multiple locations, Lonza, Inc. had operations located in Williamsport, Pennsylvania.  At its Williamsport, PA plant, Lonza, Inc. manufactured, among other products, specialty surfactants, industrial lubricants, and food additives.  At its Williamsport, PA plant, Lonza, Inc. also manufactured multiple versions of hydantoin, which is used in, among other applications, pesticides and industrial water treatment.

26.     Hydantoin is a "hazardous substance' as defined under Section 101(14) of CERCLA, 42 U.S.C. § 9601(14) and Section 103 of HSCA, 35 P.S. § 6020.103.

27.     At its Williamsport plant, Lonza, Inc. had a demonstrated history of non-compliance with environmental law, including repeated violations involving hazardous waste drum mislabeling and the unpermitted discharge of industrial wastewater into Pennsylvania waters.

28.     During its time of operation, Lonza Inc.'s Williamsport, PA plant at times transported its off-spec waste hydantoin for legal disposal at a permitted landfill or incinerator.  In the 1980s and early 1990s, in various instances, Lonza, Inc. elected not to undertake proper disposal of  its off-spec waste hydantoin. Instead, sometimes under the guise of a sale, Lonza, Inc. arranged with Bud Davidson and his sons for disposal or processing at the Site of multiple shipments

of unusable, unmarketable, discarded off-spec waste hydantoin Lonza, Inc. had generated and possessed at its Williamsport, PA plant.

29.  During its cleanup of the Site, the Department encountered drums marked "Lonza, Inc. Scrap Material." These drums contained unusable, unmarketable, discarded off-spec waste hydantoin that Lonza, Inc. had generated and sent to the Site and that, under arrangement with Lonza, Inc. and with Lonza, Inc.'s knowledge, the Davidsons illegally disposed of at the Site.

30.  In addition, as Lonza, Inc. knew, or reasonably should have known, Bud Davidson, working as an individual small business operator, could not use in his essentially one-man blending operation at the Site, within a reasonable time frame, the high volume of the unusable, unmarketable, discarded off-spec waste hydantoin Lonza, Inc. sent him.  As a result, as Lonza, Inc. knew, or reasonably should have known, Bud Davidson and his sons illegally disposed of a major portion of the waste hydantoin Lonza, Inc. sent them, by continually stockpiling and abandoning the waste hydantoin throughout Site buildings.  During its cleanup of the Site, the Department addressed and properly disposed of some 140 tons of the waste hydantoin that, over time, Lonza, Inc. had generated and sent to the Site and that the Davidsons, under arrangement with Lonza, Inc. and with Lonza's knowledge, had illegally disposed of.

31.     Lonza, Inc. knew, or reasonably should have known, that Site conditions resulting from this disposal it arranged with the Davidsons would lead to a release of hazardous substances and the need for the Department's response.

32.     In addition, as Lonza, Inc. knew, Bud Davidson used some portion of the unusable, unmarketable, discarded off-spec waste hydantoin Lonza sent him in experimental applications that involved Davidson's changing the character or composition of the hydantoin.  Davidson described in 1989 correspondence with Lonza, Inc. his use of its waste hydantoin in experimental applications involving, among others, "algae and/or bacteria control in well drilling pit water," "slime and anti-dermatitic agents for grinding and polishing formulations," and "cyanide destruction in electroplating rinse water."

33.     Lonza, Inc. knew, or reasonably should have known, that Site conditions resulting from Davidson's processing, or treatment, of its waste hydantoin, as arranged by Lonza, Inc., would lead to a release of hazardous substances and the need for the Department's response.

34.     During its cleanup of the Site, the Department found that much of the some 140 tons of waste hydantoin it found in Site buildings, and that Lonza, Inc. had generated and sent to the Site, had leaked or spilled from drums and containers and commingled with other waste into an indistinguishable mass.

35.     The particularly pernicious nature of Lonza Inc.'s waste hydantoin required that the Department, during its cleanup of the Site, use some 57,435 gallons of dechlorinating water and similarly large amounts of soda ash in order to stabilize the hydantoin prior to its disposal.

36.     The particularly pernicious nature of Lonza, Inc.'s waste hydantoin and its need for pre-disposal treatment required the Department, during its cleanup of the Site, to conduct additional sampling to confirm whether hydantoin was present or absent in the great number of unidentified containers found at the Site.

37.     No single contaminant required more cleanup costs during the Department's cleanup of the Site than the unusable, unmarketable, discarded off-spec waste hydantoin Lonza, Inc. generated and, under arrangement with Bud Davidson and his sons, with knowledge of their actions, Lonza, Inc. sent to the Site for illegal disposal and processing.

M. Ultra Investment Group.

38.     In 1997, Brad Davidson and his father, Bud Davidson, doing business as Davidson Industries, sold the Site to One Brewery Place, Inc.  Brad Davidson at the time was the President of One Brewery Place, Inc.  Currently, Brad Davidson serves as both President and Secretary of One Brewery Place, Inc.

39.     In 2017, Brad Davidson joined Ed Santillan, Anthony Manjerovic, and Paul Agostinelli to form, as lone shareholders, M. Ultra Investment Group,

Ltd., for the purpose of developing the Site as a sports bar or marketing the Site to developers for that or a similar use.

40.     Since at least 2017, M. Ultra Investment Group, Ltd. has exercised managerial, decision-making control in respect to the Site in its attempts to market and sell the Site to potential buyers.  As such, M. Ultra Investment Group, Ltd. has acted as a de facto operator of the Site.

41.     Since at least 2017, M. Ultra Investment Group, Ltd. has exercised managerial, decision-making control in respect to the Site's compliance with environmental law; negotiation with the Department over the Site's cleanup; and the retention of an environmental contractor to characterize and remediate Site waste.  As such, M. Ultra Investment Group, Ltd. has acted as a de facto operator of the Site.

42.     In 2017, in a Chapter 11 bankruptcy filed by One Brewery Place, Inc., M. Ultra Investment Group, Ltd. made a loan of $252,000 to One Brewery Place, Inc. and agreed to service that loan in order that One Brewery Place, Inc. could satisfy all creditor and administrative claims filed in its bankruptcy, with the intent to preclude transfer of Site title to a third party and ensure M. Ultra Investment Group, Ltd.'s retention of its managerial, decision-making control in respect to the Site.  As such, M. Ultra Investment Group, Ltd. has acted as a de facto operator of the Site.

43.     In 2022, Ed Santillan, on behalf of M. Ultra Investment Group, Ltd., paid the Tax Bureau of Beaver County, PA school and property taxes owed by One Brewery Place, Inc. in the amount of $12,253.63, with the intent to preclude transfer of Site title to a third party and ensure M. Ultra Investment Group, Ltd.'s retention of its managerial, decision-making control in respect to the Site.  As such, M. Ultra Investment Group, Ltd. has acted as a de facto operator of the Site.

44.     M. Ultra Investment Group. Ltd. took the actions described in Paragraphs 38 through 43 and acted as a de facto operator of the Site at the time of the disposal of hazardous substances at the Site.

**FIRST CLAIM FOR RELIEF:**
**RECOVERY OF RESPONSE COSTS AND APPLICABLE INTEREST**
**PURSUANT TO SECTION 107(a) of CERCLA**

45.     The averments of Paragraphs 1 through 44 are incorporated by reference as if set forth at length herein.

46.     Defendants are "persons" as that term is defined in Section 101(21) of CERCLA, 42 U.S.C. § 9601(21).

47.     The Site is a location where hazardous substances have been deposited, stored, disposed of, placed or otherwise come to be located, and thus is a "facility" as that term is defined in Section 101(9) of CERCLA, 42 U.S.C. § 9601(9).

48. There has been a "release or threatened release" of "hazardous substances" at or from the Site, as those terms are defined in Sections 101(14), 101(22) and 107(a) of CERCLA, 42 U.S.C. §§ 9601(14), 9601(22) and 9607(a).

49. As described in Paragraph 10, One Brewery Place, Inc. is the owner and operator of a facility within the meaning of Section 107(a)(1) of CERCLA, 42 U.S.C. § 9607(a)(1).

50. As described in Paragraphs 10 through 22 and 38 through 44, One Brewery Place, Brad Davidson, Randy Davidson, and M. Ultra Investment Group, Ltd., at the time of disposal of hazardous substances, owned or operated a facility at which such hazardous substances were disposed of, within the meaning of Section 107(a)(2) of CERCLA, 42 U.S.C. § 9607(a)(2).

51. As described in Paragraphs 23 through 37, by contract, agreement or otherwise, Arxada, LLC, or its predecessor-in-interest, arranged for disposal or treatment at the Site of hazardous substances it owned or possessed, within the meaning of Section 107(a)(3) of CERCLA, 42 U.S.C. § 9607(a)(3).

52. As described in Paragraphs 18 through 22, as a result of the release or threatened release of hazardous substances at the Site, the Department has incurred "response costs" as defined in Sections 101(25) and 107(a) of CERCLA, 42 U.S.C. §§ 9601(25) and 9607(a), for actions taken in response to the release and threatened release of hazardous substances at the Site.

53.     The response costs incurred by the Department in connection with the Site were reasonable and necessary and were incurred in a manner not inconsistent with the National Contingency Plan, 40 C.F.R. Part 300, *as amended*.

54.     Pursuant to Section 107(a) of CERCLA, 42 U.S.C. § 9607(a), Defendants are strictly and jointly and severally liable to the Department for response costs incurred at the Site, together with applicable interest.

**SECOND CLAIM FOR RELIEF:**
**RECOVERY OF RESPONSE COSTS AND APPLICABLE INTEREST**
**PURSUANT TO SECTIONS 507(a), 507(b), 701 AND 702 OF HSCA**

55.     The allegations of Paragraphs 1 through 54 are incorporated herein by reference.

56.     The Defendants are each a "person" as that term is defined in Section 103 of HSCA, 35 P.S. § 6020.103.

57.     As an area where hazardous substances have been released or threatened release, the Site is a "site" as that term is defined in Section 103 of HSCA, 35 P.S. § 6020.103, and as that term is used in Sections 701 and 702 of HSCA, 35 P.S. §§ 6020.701 and 6020.702.

58.     There has been a "release or threatened release" of "hazardous substances" at or from the Site, as those terms are defined in Section 103 of HSCA, 35 P.S. § 6020.103, and used in Sections 701 and 702 of HSCA, 35 P.S. §§ 6020.701 and 6020.702.

59.     As described in Paragraphs 10 through 22 and 38 through 44, One Brewery Place, Inc., Brad Davidson, Randy Davidson, and M. Ultra Investment Group, Ltd., owned or operated the Site when a hazardous substance was placed or came to be located at the Site, when a hazardous substance was located in or on the Site but before it was released, or during the time of the release or threatened release, within the meaning of Section 701(a)(1) of HSCA, 35 P.S. § 6020.701(a)(1).

60.     As described in Paragraphs 23 through 37, by contract, agreement or otherwise, Arxada, LLC or its predecessor-in-interest, arranged for disposal or treatment at the Site of hazardous substances it owned or possessed, within the meaning of Section 701(a)(2) of HSCA, 35 P.S. § 6020.701(a)(2).

61.     As described in Paragraphs 18 through 22, as a result of the release or threatened release of hazardous substances at the Site, the Department has incurred "response costs" for actions taken in response to the release and threatened release of hazardous substances at the Site, as the term "response costs" is defined in Section 103 of HSCA, 35 P.S. § 6020.103 and used in Sections 701 and 702 of HSCA, 35 P.S. §§ 6020.701 and 6020.702.

62.     The response costs incurred by the Department in connection with the Site were reasonable and necessary.

63.     Pursuant to Sections 507(a), 507(b), 701 and 702 of HSCA, 35 P.S.

§§ 6020.507(a), 6020.507(b), 6020.701 and 6020.702, Defendants are strictly and

jointly and severally liable to the Department for response costs incurred at the

Site, together with applicable interest.

**THIRD CLAIM FOR RELIEF:**
**RECOVERY OF RESPONSE COSTS AND APPLICABLE INTEREST**
**PURSUANT TO SECTIONS 507(A), 1101 AND 1108 OF HSCA**

64.     The allegations of Paragraphs 1 through 63 are incorporated herein by

reference.

65.     Pursuant to Section 1101 of HSCA, 35 P.S. § 6020.1101, the release

of hazardous substances at the Site resulted in a public nuisance.

66.     As described in Paragraphs 10 through 22 and 38 through 44, One

Brewery Place, Inc. Brad Davidson, Randy Davidson, and M. Ultra Investment

Group, Ltd., caused this public nuisance by owning or operating the Site at the

time of a release of hazardous substances they either caused to take place or,

despite knowledge thereof, allowed to continue unabated.   As a result, Site

conditions, for which they are responsible, posed a continuing substantial danger to

the public's health and safety and the environment.

67.     As described in Paragraphs 23 through 37, Arxada, LLC caused this

public nuisance by arranging for the disposal or treatment of unusable,

unmarketable, discarded waste containing hazardous substances that it knew would

be released at the Site and result in a continuing substantial danger to the public's health and safety and the environment. Despite knowledge thereof, Arxada, LLC allowed this public nuisance, for which it is responsible, to continue unabated.

68. Pursuant to Sections 507(a), 1101 and 1108 of HSCA, 35 P.S. §§ 6020.507(a), 6020.1101 and 6020.1108, Defendants are strictly and jointly and severally liable for the Department's costs to abate the public nuisance at the Site, together with applicable interest.

## FOURTH CLAIM FOR RELIEF:
## RECOVERY OF RESPONSE COSTS AND APPLICABLE INTEREST
## PURSUANT TO SECTIONS 601, 610 AND 613 OF THE SWMA

69. The allegations of Paragraphs 1 through 68 are incorporated herein by reference.

70. Pursuant to Section 601 of the SWMA, 35 P.S. § 6018.601, any violation of the SWMA constitutes a public nuisance.

71. As described in Paragraphs 10 through 22 and 38 through 44, One Brewery Place, Inc., Brad Davidson, Randy Davidson, and M. Ultra Investment Group, Ltd. violated Sections 610(1), 610(2), 610(4), 610(6), and 610(9) of the SWMA, 35 P.S. §§ 6018.610(1), 6018.610(2), 6018.610(4), 6018.610(6), and 6018.610(9).

72. As described in Paragraphs 23 through 37, Arxada, LLC violated Sections 610(1), 610(2), 610(4), 610(5), 610(6), 610(8), and 610(9) of the SWMA,

35 P.S. §§ 6018.610(1), 6018.610(2), 6018.610(4), 6018.610(5), 6018.610(6), 6018.610(8), and 6018.610(9).

73.     Pursuant to Section 613 of the SWMA, 35 P.S. § 6018.613, the Department is authorized to recover the costs of abatement from those who have caused a public nuisance.

74.     Pursuant to Sections 601, 610 and 613 of the SWMA, 35 P.S. §§ 6018.601, 6018.610 and 6018.613, Defendants are jointly and severally liable for the Department's costs to abate the public nuisance at the Site, together with applicable interest.

**FIFTH CLAIM FOR RELIEF:**
**RECOVERY OF RESPONSE COSTS AND APPLICABLE INTEREST**
**PURSUANT TO SECTIONS 3, 316, 401, 503, 601, 602, 605, AND 611 OF**
**THE CSL**

75.     The allegations of Paragraphs 1 through 74 are incorporated herein by reference.

76.     Pursuant to Sections 3, 401, 503, 601 and 611, 35 P.S. §§ 691.3, 691.401, 691.503, 691.601, and 691.611, an unpermitted discharge of any substance into Pennsylvania waters that causes or contributes to pollution or creates a danger of such pollution constitutes a public nuisance.

77.     Pursuant to Section 601, 610, and 701 of the SWMA, 35 P.S. § 6018.601, 6018.610, and 6018.701, the Department is authorized to recover the costs of abatement from those who have caused a public nuisance.

78.    Pursuant to Section 316 of the CSL, 35 P.S. § 691.316, a landowner or occupier is responsible to correct a condition that results in pollution or potential pollution to Pennsylvania waters or is liable to the Department for costs to correct the condition.

79.    As described in Paragraphs 10 through 22 and 38 through 44, Defendants One Brewery Place, Inc., Brad Davidson, Randy Davidson, and M. Ultra Investment Group, Ltd. are jointly and severally liable for the Department's costs to abate the public nuisance at the Site, together with applicable interest, pursuant to Sections 3, 401, 503, 601, 610, 611, and 701 of the CSL, 35 P.S. §§ 691.3, 691.316, 691.401, 691.503, 691.601, 691.610, 691.611, and 691.701, and, as owner or operator-occupier of the Site, pursuant to Section 316 of the CSL, 35 P.S. § 691.316.

80.    As described in Paragraphs 17 and 23 through 37, Arxada, LLC is jointly and severally liable for the Department's costs to abate the public nuisance at the Site, together with applicable interest, pursuant to Sections 3, 401, 503, 601 601, 611, and 701, 35 P.S. §§ 691.3, 691.401, 691.503, 691.601, 691.610, 691.611, and 691.701.

## SIXTH CLAIM FOR RELIEF:
## RECOVERY OF RESPONSE COSTS AND APPLICABLE INTEREST
## PURSUANT TO SECTION 1917-A OF THE ADMINISTRATIVE CODE

81.     The allegations of Paragraphs 1 through 80 are incorporated herein by reference.

82.     Pursuant to Section 1917-A(1) of the Administrative Code, 71 P.S. § 510-17(1), the Department is authorized to abate or remove any condition which is declared to be a nuisance by any law administered by the Department.

83.     As described in Paragraphs 64 through 80, the release of hazardous substances at the Site resulted in a public nuisance pursuant to HSCA, the SWMA, and the CSL.

84.     Pursuant to Section 1917-A(5) of the Administrative Code, 71 P.S. § 510-17(5), the Department is authorized to recover the expense of abatement or removal of a nuisance from the owner or occupant of the subject property.

85.     As described in Paragraphs 10 through 22 and 38 through 44, Defendants One Brewery Place, Inc., Brad Davidson, Randy Davidson, and M. Ultra Investment Group, Ltd. are jointly and severally liable, as owner or operator-occupant of the Site, for the Department's costs to abate or remove the public nuisance at the Site, together with applicable interest, pursuant to Sections Section 1917-A(1) and (5) of the Administrative Code, 71 P.S. § 510-17(1) and (5).

## PRAYER FOR RELIEF

WHEREFORE, the Department prays that this Court:

(a)     Enter judgment against the Defendants, jointly and severally, in favor of the Department, for all response and nuisance abatement costs incurred by the Department at the Site, together with applicable interest.

(b)     Award to the Department its costs and fees in this action; and

(c)     Grant such other relief as this Court deems appropriate.

Respectfully submitted,

**FOR THE COMMONWEALTH OF PENNSYLVANIA, DEPARTMENT OF ENVIRONMENTAL PROTECTION:**

*/s/ Edward S. Stokan*
Edward S. Stokan
Assistant Regional Counsel
PA ID No. 46042
estokan@pa.gov

Tyra Oliver
Assistant Counsel
PA ID No. 202620
tyoliver@pa.gov

Office of Chief Counsel
400 Waterfront Drive
Pittsburgh, PA 15222-4745
Telephone: (412) 442-4262
Fax: (412) 442-4267

Date: November 8, 2023